# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DESTINED C.M.D. GEORGE,** ) | |
|     Plaintiff ) | Civil Action No.: 7:19cv00846 |
| ) | |
| v. ) | |
| ) **REPORT AND RECOMMENDATION** | |
| **C.O. PUCKETT and** ) | |
| **C.O. OH,** ) | |
|     Defendants. ) | |

The pro se plaintiff, Destined C.M.D. George, ("George"), a Virginia Department of Corrections, ("VDOC"), inmate, sues two VDOC Red Onion State Prison, ("Red Onion"), correctional officers, C.O. Puckett and C.O. Oh, in this civil rights action pursuant to 42 U.S.C. § 1983. The court entered an Opinion and Order in this matter on February 18, 2021, finding that George had failed to exhaust his administrative remedies related to his claims. However, the matter was referred to the undersigned for an evidentiary hearing to determine whether the prison grievance procedures were, in fact, unavailable to George, thereby excusing his failure to exhaust. The matter is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

An evidentiary hearing was held by video conference before the undersigned on April 27, 2021. Based on the arguments and representations of counsel and George, as well as the evidence presented at this hearing, I find that the prison grievance procedures were not unavailable to George at the time he filed his Complaint in this court, and I recommend that the court grant summary judgment in

favor of the defendants on George's claims for failing to exhaust his administrative remedies.

A brief summary of the underlying facts in this case was set out in Judge Jones's February 18, 2021, Opinion and Order and will be repeated here. George claims that on November 13, 2019, while incarcerated at Red Onion, Puckett conducted a body search of George, who was clad in only his underwear and undershirt, when Puckett "sexually assaulted [George] by squeezing the upper right side of [his] buttox [sic] then smacking [him] on the right side of the back of [his] buttox [sic]" for no reason. (Docket Item No. 1, ("Complaint"), at 3.) George later made a Prison Rape Elimination Act, ("PREA"), report about the incident. Thereafter, George claims, Oh "stat[ed that] he was refusing [George his] right to a haircut and use of the kiosk because [George had] called PREA." (Complaint at 3.)

In the February 18, 2021, Opinion and Order, Judge Jones found that the defendants established that George failed to exhaust his administrative remedies, as required under the Prison Litigation Reform Act of 1995, ("PLRA"), but he found that there was a material dispute as to the issue of availability of the grievance procedures to George. Thus, he referred the following specific issues to the undersigned for further consideration: (1) whether George filed administrative remedy forms he claims about the sexual assault incident and the retaliation incident; (b) how he could have verified that such forms had been timely received by the proper authority; and (c) what recourse he had if he never received any response of any kind to his initial filings.

*I. Facts*

At the April 27 evidentiary hearing, George testified that he was a VDOC inmate housed in the C-2 restrictive housing unit, ("RHU"), at Red Onion beginning about a year prior to November 2019 and continuing through the date of the hearing. George said that, because he was in an RHU, he had to give his outgoing mail, whether internal or external, to a correctional officer to be delivered into the prison's mail system. George said that on the same day that he alleges Puckett assaulted him, November 13, 2019, he gave a Regular Grievance form complaining of the incident to a correctional officer to be delivered to the prison's Grievance Department. George testified that he does not remember which correctional officer took this form from him. George said he did not file an Informal Complaint regarding this alleged assault because the prison's grievance procedure did not require him to do so. George stated that he had a photocopy of this Regular Grievance made before he submitted it, but that he no longer possessed that copy because he had mailed it to the Regional Ombudsman.

George testified that, after 30 days passed and he had received no response to his November 13, 2019, Regular Grievance, he submitted another "duplicate" Regular Grievance form, ("Duplicate Regular Grievance"), concerning Puckett's alleged assault directly to the VDOC's Regional Ombudsman. He said he completed this Duplicate Regular Grievance identically to how he completed his November 13, 2019, Regular Grievance. George testified that he gave this form to a correctional officer to be placed in the prison's outgoing bulk mail to the Regional Ombudsman. George said he asked that the form be sent by bulk mail so he would not be required to pay any postage. He said that he does not remember which correctional officer took this form, but he knows that he placed it in the mail approximately 30 days after

he filed his November 13, 2019, Regular Grievance. George testified that he had a photocopy made of this Duplicate Regular Grievance before he put it in the mail to the Regional Ombudsman. George testified that he never received any response to his Duplicate Regular Grievance.

George testified that, while he understood that under the VDOC's grievance procedure he could have appealed his November 13, 2019, Regular Grievance to Level II review by the Regional Ombudsman, he admitted that he did not do so. He further testified that, after not receiving any response from the Regional Ombudsman to his Duplicate Regular Grievance, he mailed another copy of his Duplicate Regular Grievance to the Regional Ombudsman approximately 30 days later. George said that on this copy he added a line stating, "This is my third attempt at the grievance process." He said he mailed this copy of his Duplicate Regular Grievance to the Regional Ombudsman by giving it to a correctional officer to place in the bulk mail, and he did not recall the name of the correctional officer who took this form from him. George testified that he never received any response to filing this form with the Regional Ombudsman.

George testified that, approximately 30 days later, around the middle of February 2020, he mailed another copy of his Duplicate Regular Grievance form to the Regional Ombudsman. On this copy of the form, he added, "This is my fourth attempt at the grievance process." George said that he had a photocopy made of this form before he mailed it. George said that he placed this form in the bulk mail to the Regional Ombudsman by giving it to a correctional officer, whose name he does not recall. A copy of this form was admitted into evidence as Plaintiff's Exhibit No. 1.

Plaintiff's Exhibit No. 1 is a VDOC Regular Grievance form, on which George wrote, in part:

> On 11-13-19 while being exscorted [sic] out of my cell: C-218 to be taken to the shower C.O. Puckett conducted a body-search, during the search Puckett sexually assaulted me by squeezing the upper right side of my buttox [sic] then smacking me on the back of the right side of my buttox.

Plaintiff's Exhibit No. 1 was dated "12/19/19," but George testified that this was not the date on which he filed the Duplicate Regular Grievance with the Regional Ombudsman on the first occasion. On direct examination, George testified that he filed the Duplicate Regular Grievance approximately 30 days after he filed his November 13, 2019, Regular Grievance; on cross-examination, George said that he signed the Duplicate Regular Grievance on December 19, 2019, but held on to it before he requested a photocopy be made on a later date before he filed it with the Regional Ombudsman.

George testified that he did not make any further attempts to exhaust his administrative remedies with regard to this alleged November 13, 2019, assault, even though he conceded that he knew that, under the VDOC's offender grievance procedure, there is no time limit on the filing of a Regular Grievance alleging a sexual assault. He said he did not file any further administrative remedy request on this incident because he had gotten no response to any of his filings.

George said that he filed an Informal Complaint on December 23, 2019, complaining that he had not received responses to his Regular Grievances regarding his alleged assault by Puckett. A copy of this Informal Complaint form was admitted

into evidence as Plaintiff's Exhibit No. 3. George said he filed this form by handing it to a correctional officer, whose name he did not recall. George said that he did not have to request a photocopy of this Informal Complaint because the form made a carbon copy that he retained. Plaintiff's Exhibit No. 3 states: "I've written several Regular [G]rievances about sexual abuse by C.O. Puckett but I've not gotten any response nor a receipt for those Regular [G]rievances. Have you received any of them?" George said he never received a response to this Informal Complaint.

With regard to his claim that Oh retaliated against him on December 2, 2019, George testified that he filed an Informal Complaint on that same day. George said that he had a photocopy of this form made before he mailed it. A copy of this Informal Complaint was admitted into evidence as Plaintiff's Exhibit No. 2. Like with his other filings, George said that he put this form in an envelope addressed to the prison's Grievance Department and gave it to a correctional officer. He said he did not recall which correctional officer took this form. Plaintiff's Exhibit No. 2 stated: "Today C/O Oh refused me my haircut and access to the kiosk and he stated it was because I called 'prea' on C/O Puckett." This form is dated "12/2/19."

George testified that he never received any response to this Informal Complaint. He said that he filed a Regular Grievance, complaining of Oh's alleged retaliation, on December 17, 2019. George said that he did not have a photocopy made of this Regular Grievance before he filed it. He said he placed it in an envelope addressed to the prison's Grievance Department and handed it to a correctional officer to be placed in the mail. He said that he did not recall the name of the correctional officer who took this form. George said he never received a response to his December 17, 2019, Regular Grievance.

Despite George's allegations that he had not received responses to any of his administrative remedies forms, George said that he did not keep any record of the names of the correctional officers to whom he had given these forms. He conceded that all correctional officers at Red Onion wore small tags on their uniforms with their last names. On cross-examination, George conceded that neither Puckett nor Oh collected any of his administrative remedies forms because he knew them and would have been able to identify them.

George testified that, when he did not receive a response to his December 17, 2019, Regular Grievance, he completed a "duplicate" Regular Grievance identical to his December 17, 2019, Regular Grievance, and he mailed this duplicate Regular Grievance to the Regional Ombudsman. He said that he wrote on this duplicate Regular Grievance: "This is my second attempt at grievance process." George said he never received any response to this duplicate Regular Grievance from the Regional Ombudsman, and he did not take any further action in an attempt to exhaust his administrative remedies on his retaliation claim against Oh.

George conceded that he did not have any problem obtaining the forms necessary to timely file his requests for administrative remedies with regard to his claims against Puckett and Oh. George also stated that he did not encounter any problems receiving the photocopies that he requested, although he did state that he did not always request photocopies of his administrative remedies forms before filing them because he had to pay for each photocopy he requested.

On cross-examination, George agreed that the Complaint received by this court on December 16, 2019, (Docket Item No. 1), was dated "12/12/19." When asked when he placed his Complaint in the mail, George said that he did not mail it

until the next day, December 13, 2019, despite the fact that the envelope in which the Complaint was mailed to the court was stamped:

> RECEIVED
> December 12, 2019
> MAILROOM

George later asserted that he was not sure when he placed his Complaint in the mail to the court. George did concede that, since the court's records show that his Complaint was received on December 16, 2019, he had to place it in the mail prior to this date. Therefore, George conceded that his Complaint was filed with this court prior to the date on which he filed his December 17, 2019, Regular Grievance, complaining of Oh's alleged retaliation. He also conceded that his Complaint was filed with the court before the deadline for the Regional Ombudsman to respond to his Duplicate Regular Grievance concerning Puckett's alleged sexual assault.

Red Onion Case Management Counselor Ryan Keith Clevinger testified that, in his role as a counselor, he was responsible for notarizing and making copies of documents for inmates. Clevinger testified that he did not keep a log of the documents he notarized. He stated that he did not mail the inmate documents that he notarized. Clevinger stated that he would make requested photocopies of an inmate's documents only if the inmate had filled out the proper request to withdraw money from his inmate account to pay for the copies and the Business Office confirmed that there was money in the inmate's account to pay for the copies.

Cathy Meade, Red Onion Grievance Coordinator, testified that the VDOC grievance procedure in effect in 2019 was set out in VDOC Operating Procedure, ("OP"), 866.1, Offender Grievance Procedure, which was admitted into evidence as

Defendants' Exhibit No. 2. Meade said that all VDOC inmates are informed of this Offender Grievance Procedure. Meade testified that when an inmate filed an Informal Complaint, it was forwarded to the Grievance Department, where the Grievance Coordinator or an assistant logged the Informal Complaint into CORIS, the VDOC's inmate records electronic database. Once the Informal Complaint was logged, the inmate received a receipt, and the Informal Complaint was forwarded to the proper department for a response within 15 days. Meade said that, if the inmate did not receive a response to his Informal Complaint within 15 days, he could use his receipt to file a Regular Grievance. Under the Offender Grievance Procedure, Meade said, a Regular Grievance must be filed within 30 days of the incident about which the inmate was complaining. Meade said that, under the Offender Grievance Procedure, there was no time limit on filing a Regular Grievance regarding a "PREA" complaint.

Meade testified that, when a Regular Grievance is received by the Grievance Department, it is logged into CORIS, and the inmate is sent a receipt. Meade said that the Offender Grievance Procedure required that a Regular Grievance be responded to within 30 days of its filing. Meade said that the response to a Regular Grievance is provided on the original Regular Grievance form, which is returned to the inmate who filed it. Once an inmate receives this Level I response to a Regular Grievance, under the Offender Grievance Procedure, he has five days to file an appeal of the decision to Level II to the Regional Ombudsman. Meade said that there was no appeal beyond Level II for complaints regarding assaults or retaliation.

Meade testified that an Offender Grievance Report for George, for the period from November 1, 2019, to April 8, 2021, which was admitted into evidence as Defendants' Exhibit No. 3, showed that George filed no Informal Complaints or

Regular Grievances regarding either his alleged assault by Puckett on November 13, 2019, or Oh's alleged retaliation on December 2, 2019. Meade said the Report showed that George filed Informal Complaints and Regular Grievances regarding other issues during this time period. A review of Defendants' Exhibit No. 3, shows that George filed the following requests for administrative remedies during the period from November 1, 2019, to April 8, 2021:

| | |
|---|---|
| 11/5/19 | Regular Grievance regarding Dental Services |
| 11/20/19 | Informal Complaint regarding need for new clothes |
| 11/20/19 | Informal Complaint regarding retaliatory search of cell |
| 9/15/20 | Informal Complaint regarding Offender Services |
| 10/12/20 | Informal Complaint regarding ordered property not received |
| 11/17/20 | Regular Grievance regarding ordered property not received |
| 11/30/20 | Informal Complaint regarding retaliation due to religious beliefs |
| 1/20/21 | Informal Complaint regarding access to Health Services |
| 2/10/21 | Informal Complaint regarding wrong size apparel from Commissary |

Meade testified that the Grievance Reports for the period of November 1, 2019, to December 31, 2019, which were admitted into evidence as Defendants' Exhibit No. 4, showed each administrative remedies request filed by all Red Onion inmates, including other inmates housed in the same housing unit as George, C-2, for this period. A review of Defendants' Exhibit No. 4 shows that George filed only these three administrative remedies requests during this period:

| | |
|---|---|
| 11/5/19 | Regular Grievance regarding Dental Services |
| 11/20/19 | Informal Complaint regarding need for new clothes |
| 11/20/19 | Informal Complaint regarding retaliatory search of cell |

Meade testified that there was no indication that Plaintiff's Exhibit Nos. 1, 2 or 3 were ever received or processed by the Red Onion Grievance Department.

Misty Counts, Red Onion Operations Manager, testified mail in Red Onion's RHUs is collected on the overnight shift, between the hours of 5:45 p.m. and 6:15 a.m. Counts said that an inmate held in an RHU places an item in the mail by handing it to a correctional officer at his cell door. The officer would then place the mail, whether internal or external, in a mailbag, which is taken from the housing unit to the Administrative Building and placed into a locked cart to be transported to the prison's mailroom to be sorted. She said that mail is collected Monday through Friday and on Sunday, with the exception of holidays. She said that there were no mail drop boxes in RHUs. She said that all administrative remedies requests, other than emergency grievances, would be filed by submitting them through the prison's institutional mail system. Once the mail is received in the mailroom, the internal institutional mail is sorted and delivered to the various departments. All external outgoing legal mail is logged, while outgoing external non-legal mail is not logged.

Counts testified that the document admitted into evidence as Defendants' Exhibit No. 5 showed all outgoing legal mail sent by George from December 1, 2019, to January 24, 2020, including any mailings George made to this court. Defendants' Exhibit No. 5 shows that George sent mailings to this court on December 4, 12 and 26, 2019. Counts also testified that the Trust Monthly Statement for George's prisoner trust account for the month of December 2019, which was admitted in evidence as Defendants' Exhibit No. 1, showed debits for all photocopies made at George's request during that month. Counts testified that a review of Defendants' Exhibit No. 1 shows that the only photocopies made for George in the month of December 2019 were six pages of legal photocopies made on December 10, 2019, which is the exact length of George's Complaint and proposed summons, received by the court on December 16, 2019. Counts testified that an Offender Trust System – Withdrawal Request, admitted as part of Defendants' Exhibit No. 1,

indicated that George requested a withdrawal for copies of his six-month statements.[1] Contrary to George's testimony, Defendants' Exhibit No. 1 does not show that George requested or received a copy of Plaintiff's Exhibit No. 2, his December 2, 2019, Informal Complaint, alleging retaliation by Oh. George's Trust Monthly Statements for the period of January and February 2020, and an attached Offender Trust System – Withdrawal Request form dated January 3, 2020, which were admitted into evidence as Defendants' Exhibit No. 6, show that George requested and paid for only three photocopies of Informal Complaints on January 9, 2020. Copies of no other documents were made for George during this period. In particular, Defendants' Exhibit No. 6 does not show that George requested or received a photocopy of Plaintiff's Exhibit No. 1 before he mailed it in February 2020.

In rebuttal, George testified that he had copies of Informal Complaints that were stamped filed with the Grievance Department on November 5, 2019, that were not listed on Defendants' Exhibit Nos. 3 and 4. An Informal Complaint, dated September 26, 2019, by George and stamped "Received Nov 05 2019 Grievance Dept." was admitted into evidence as Plaintiff's Exhibit No. 5. An Informal Complaint, dated October 20, 2019, by George and stamped "Received Nov 05 2019 Grievance Dept." was admitted into evidence as Plaintiff's Exhibit No. 6. Plaintiff's Exhibit No. 5 contains a complaint by George that he had been charged for copies of administrative remedies forms that were not provided to him. This Informal Complaint form shows that it was received in the Grievance Department on September 30, 2019, and logged in as ROSP-19-INF-01884. The Informal

---

[1] When prisoners seek to file an action such as this one in forma pauperis, without paying the court's filing fee, the court routinely enters an order requiring the prisoner to provide the court information regarding the amount of funds in his prisoner trust account for the six months previous to filing suit. These forms are referred to as "six-month statements" or "six-month reports."

Complaint was assigned to the Grievance Department to respond by October 14, 2019, and contained a response from G. Adams dated October 2, 2019. Plaintiff's Exhibit No. 6 contains a complaint by George that he needed dental services. This Informal Complaint form shows that it was received in the Grievance Department on October 22, 2019, and logged in as ROSP-19-INF-02042. The Informal Complaint was assigned to the Dental Department to respond by November 6, 2019, and contained a response from R. Hubbard dated October 30, 2019.

Meade testified on recall that, when an inmate files a Regular Grievance, he must attach the Informal Complaint that addressed the same issue. These attached Informal Complaints are stamped received by the Grievance Department on the date they are received with the filing of the Regular Grievance. Meade testified that George's Offender Grievance Report for the period of September and October 2019, which was admitted into evidence as Defendants' Exhibit No. 7, showed that both ROSP-19-INF-01884 and ROSP-19-INF-02042 were originally received and processed by the Grievance Department earlier than November 5, 2019. Defendants' Exhibit No. 7 shows that ROSP-19-INF-01884, Plaintiff's Exhibit No. 5, was received on September 30, 2019, and ROSP-19-INF-02042, Plaintiff's Exhibit No. 6, was received on October 22, 2019. Meade testified that her records show that George filed a Regular Grievance on November 5, 2019, a copy of which was admitted into evidence at Defendants' Exhibit No. 8, complaining that he had paid for copies of Regular Grievance forms that were not provided to him. Meade stated that Defendant's Exhibit No. 8 was rejected at intake for insufficient information, so it does not appear on George's Grievance Report for that period. She said that copies retained in the Grievance Department show that a copy of ROSP-19-INF-01884, Plaintiff's Exhibit No. 5, was received in the Grievance Department on November 5, 2019, as an attachment to this rejected Regular Grievance. Meade also testified

that George's Offender Grievance Report shows that George filed a Regular Grievance on November 5, 2019, regarding dental services, and ROSP-19-INF-02042, Plaintiff's Exhibit No. 6, should have been attached to that Regular Grievance and received in the Grievance Department and stamped on that date, also. Meade specifically testified that, when Informal Complaints are originally received in the Grievance Department, they are not stamped received, but rather are logged in, the inmate is sent a receipt, and the Informal Complaint is forwarded to the responding department. She said Informal Complaints would be stamped received by the Grievance Department only when they were later attached to a Regular Grievance.

A review of VDOC OP 866.1, Defendants' Exhibit No. 2, shows that it requires complete exhaustion. OP 866.1 states:

> An offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue.
> … If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue.

(OP 866.1 at 6.)

According to OP 866.1, prison staff should respond to an Informal Complaint within 15 calendar days to ensure that informal responses are provided prior to the expiration of the 30-day time period in which an offender may file his Regular Grievance. Regular Grievances are required to be submitted within 30 days from the date of the occurrence/incident. There are three possible levels of review available

for Regular Grievances that are accepted at intake. Level I reviews are conducted by the Facility Unit Head of the facility where the offender is located. If the offender is dissatisfied with the Level I determination, he may appeal to Level II. Level II reviews are conducted by the Regional Administrator, Health Services Director or Chief of Operations for Classification and Records. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Deputy Director or the Director of the VDOC conducts a review of the Regular Grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response and 20 days for a Level III response. Expiration of a time limit without issuance of a response at any stage of the process automatically qualifies the Regular Grievance for appeal to the next level of review.

## II. Analysis

The PLRA requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See*

*Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In his February 18, 2021, Opinion and Order, Judge Jones found that George had failed to exhaust his administrative remedies prior to filing this suit, but Judge Jones found that there was a material dispute as to the issue of availability of the grievance procedures to George. As stated above, he referred the following specific issues to the undersigned for further consideration: (1) whether George filed administrative remedy forms he claims about the sexual assault incident and the retaliation incident; (b) how he could have verified that such forms had been timely received by the proper authority; and (c) what recourse he had if he never received any response of any kind to his initial filings.

George argues that he attempted to exhaust his administrative remedies, but his attempts were ignored, and no one responded to them. In particular, George testified that he attempted to exhaust his administrative remedies as to his assault

claim by filing a Regular Grievance on November 13, 2019, and three copies of a Duplicate Regular Grievance. George said that he attempted to exhaust his administrative remedies as to his retaliation claim by filing an Informal Complaint on December 2, 2019, and a Regular Grievance on December 17, 2019, and a duplicate of this Regular Grievance.

There are two problems with George's argument based on the facts presented to the court. First, assuming George's testimony is credible, his own evidence shows that he filed suit in this case before he would have known that administrative remedies were not available. The court's own record, of which the court may take notice, shows that George's Complaint was received on December 16, 2019 – one day before George filed his Regular Grievance concerning Oh's alleged retaliation and before the 20-day time limit had expired for the Regional Ombudsman to respond to his Duplicate Regular Grievance regarding Puckett's alleged assault. Second, the evidence before the court does not support George's testimony.

Defendants' Exhibit Nos. 3 and 4 show that, during the relevant period of time, George was able to file and receive responses to other administrative remedies requests. Also, the other documentary evidence presented attacks the credibility of George's testimony. While George testified that he did not mail his Complaint to this court before December 13, 2019, at the earliest, the Complaint is dated December 12, 2019, and Defendants' Exhibit No. 5 shows that it was mailed, at the latest, on December 12, 2019 – one day before the deadline to receive a response to George's November 13, 2019, Regular Grievance.

Also, George testified that he had requested and received a photocopy of Plaintiff's Exhibit No. 1, his fourth attempt at exhausting his assault claim, before

filing it in February 2020 and that he requested and received a photocopy of Plaintiff's Exhibit No. 2, his December 2, 2019, Informal Complaint on his retaliation claim before filing it on December 2, 2019. Defendants' Exhibit Nos. 1 and 6 show that these statements are not true, in that these documents contain no charges for copies on these dates. Based on this evidence, I do not find credible George's testimony that he filed the administrative remedies forms as he claims.

I further find that, had George filed these forms as he claimed, he would have known they had not been received when he did not receive any receipt for their filing. Furthermore, the Offender Grievance Procedure makes it clear that George may appeal to the next level if he had filed and had not received a response to his initial filings. Again, it is important to note that, under the Offender Grievance Procedure, there is no deadline on the filing of a Regular Grievance based on an allegation of sexual assault.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. George did not file administrative remedies forms as he claims;
2. Even if George had filed administrative remedies forms as he claims, he filed this suit before he knew that he would not receive any responses to his requests;
3. If George had filed administrative remedies forms as he claims, he would have known that they had not been received because he did not receive receipts for his filings;

4. Under the Offender Grievance Procedure, George was able to appeal the lack of response to his initial filings; and
5. Under the Offender Grievance Procedure, there is no time limit on filing a Regular Grievance based on allegations of sexual assault.

### RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court enter judgment in the defendants' favor on George's claims because he did not exhaust his available administrative remedies.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: May 5, 2021.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE